UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | Criminal Action No. 5: 08-81-DCR |
| | ) | Civil Action No. 5: 12-7238-DCR |
| V. | ) | |
| | ) | |
| PATRICK MICHAEL REILLY, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant/Movant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant/Movant Patrick Reilly's Motion to Vacate, Set Aside, or Correct His Sentence in accordance with 28 U.S.C. § 2255. Having reviewed the file of this proceeding,[1] the Court will deny the relief sought by the defendant. Reilly has not shown that he is entitled to habeas relief. Further, his objections to the Report and Recommendation of the United States Magistrate Judge are without merit.

## I.

### A.    Relevant Facts and Procedural History

Many of the facts relevant to this action are contained in an affidavit submitted by Michael Collins, a Special Agent with the Office of the Inspector General of the United States Department of Defense. [Record No. 1-2] The affidavit was submitted in connection with a

---

1    This matter was reassigned to the undersigned on December 13, 2012, following the announced retirement of former United States District Judge Jennifer B. Coffman. [Record No. 78] Reilly's § 2255 motion was filed on September 24, 2012. Because of this recent reassignment, the undersigned has thoroughly reviewed all materials filed herein.

criminal complaint filed in support of an arrest warrant issued by a United States Magistrate Judge on March 3, 2008.  The affidavit indicates that, during the time charged in the Indictment, Reilly sent twelve video files containing suspected child pornography via Yahoo instant messenger to Christine Ellis.[2]  The affidavit also asserts that Reilly asked Ellis to entice a minor to have sex with him.

On or about January 31, 2008, a Kentucky State Police detective (Detective Bertram) began monitoring Ellis's Yahoo account and correspondence with Reilly.  Upon advising the defendant that Ellis had a fourteen-year-old female staying with her, Reilly provided instructions regarding "grooming" the (fictitious) child.  Further, on February 18, 2008, Reilly sent Ellis an additional seven child pornography video files depicting children six to twelve years-old engaging in various forms of sexual behavior.  Reilly told Ellis to watch the videos with the fourteen-year-old female.  On February 29, 2008, Reilly corresponded with Ellis to arrange a meeting at a hotel in Frankfort, Kentucky for purposes of having sexual intercourse with the underage female.

Things did not go according to plan for Reilly.  The defendant was arrested in the middle district of Tennessee on March 6, 2008, and transferred to this district several days later. [Record Nos. 3, 5]  Reilly was indicted on March 27, 2008, and charged with twelve counts of distributing child pornography in violation of 18 U.S.C. § 2252(a)(2).  [*See* Record No. 9;

---

2       During the time charged in the Indictment, Reilly was a member of the United States Army stationed at Fort Campbell.  The defendant's motion seeking detention and medical treatment at FMC Lexington [Record No. 16] indicates that Reilly served two tours of duty in Iraq during April through December 2003, and September 2005 through August 2006.  The motion also states that the defendant was wounded and had surgery on his spine in May 2007.  His motion was precipitated by the desire to obtain physical therapy while being detained.

Indictment, Counts 2-13]  Additionally, in Count 1, Reilly was charged with using a computer to attempt to persuade, induce, entice, and coerce a fourteen-year-old minor to engage in sexual activity in violation of 18 U.S.C. § 2252(b).  [*Id.*, Count 1]  The matter was originally assigned for a jury trial beginning June 9, 2008.  [Record No. 12]  However, on May 23, 2008, Reilly's court-appointed attorney, David Bratt, moved for a continuance  so he could retain an expert witness to assist in examination of the subject computers.  Additionally, counsel sought the services of a mental health expert to "explore possible defenses and mitigating factors . . ." [Record No. 14]  The motion was granted and the trial was rescheduled to begin on September 15, 2008. [Record No. 15]  On August 22, 2008, Reilly filed a motion seeking medical treatment at FMC Lexington.  [Record No. 16]  This request was also granted by the Court.  [Record No. 17]

Reilly's trial counsel filed a second motion to continue trial on September 3, 2008. [Record No. 18]  In addition to noting that he (i) had only recently received some reports from the government's computer forensic examiner; (ii) needed additional time to prepare for trial; and (iii) needed additional time to attempt to negotiate a plea deal with the government, counsel noted that "a recent decision from the 7th Circuit had reinvigorated [his] belief that he needs the services of a mental health expert to explore possible defenses and mitigating factors . . ."  [*Id.*] Although this motion was also granted [Record No. 19], Reilly was not happy with the services of his first court-appointed attorney.[3]  As a result, on October 30, 2008, he sought to have the

---

3        Reilly sent two letters to the Court regarding his case.  The first letter is dated October 28, 2008, and requests that attorney Bratt be replaced as his counsel.  [*See* Record No. 20; attached correspondence] The defendant complains that Bratt has lied to him and has not followed through on matters promised (*i.e.*, evaluation by a mental health and pharmaceutical therapist).  The letter also outlines injuries Reilly received

Court appoint new counsel.  [Record No. 20]  Reilly's attorney filed a written response to the defendant's *pro se* motion.  [Record No. 21]  In responding to Reilly's specific assertions, attorney Bratt noted the following:

- counsel had been unable to negotiate a plea agreement which the defendant would accept;

- counsel had not located any authority under which he could seek to compel the government to turn over the prosecution of the defendant's case to military authorities;

- the defendant's failure to accept a plea deal in this district would result in additional charges being brought in the Middle District of Tennessee; and

- it would be beneficial for the defendant to have another attorney review the case and offer an opinion regarding the plea agreement the United States has proposed prior to new charges being filed.

[*Id.*]

The Court granted the defendant's *pro se* motion for new counsel and appointed Attorney Andrew Stephens to represent Reilly for all further proceedings.  [Record No. 22]  Following this appointment on November 25, 2008, Reilly's new counsel sought a continuance of the December 8, 2008 trial date.  [Record No. 24]  In seeking this continuance, Stephens noted that

---

while he served in the military in Iraq and asserts that Bratt tried to pressure him to enter a guilty plea pursuant to the government's offer.

The contents of Reilly's second letter are similar to the first.  [Record No. 23]  The letter is not dated, but is postmarked November 21, 2008, and filed-stamped as being received by the Court three days later. Reilly attributes Bratt's subsequent motion for a continuance of the trial to be an effort to assist the government because it was not ready to proceed with the case at the time.  He also claims that Bratt failed to conduct a face-to-face meeting despite several requests by Reilly and members of his family.  Finally, Reilly again claims that, notwithstanding pressure from Bratt, he refused to take a plea deal offered by the government which involved a sentence of ten years imprisonment.  The letter references the fact that, if the defendant refused the government's offer, additional charges would be filed in Tennessee.  In light of his record of military service, Reilly believed the government's offer was overly harsh.  [Record No. 23]

in his initial discussions with the United States' attorney, counsel pointed out "multi jurisdictional issues" as well as "an extremely complicated Plea Agreement [that] had been presented but rejected by the Defendant." [*Id.*] This motion was granted on December 4, 2008, with the trial rescheduled to begin on March 9, 2009. [Record No. 27]

On February 24, 2009, Reilly, through counsel, filed a Motion for Rearraignment. [Record No. 29] This motion was granted and a hearing was scheduled for March 9, 2009, for the purpose of allowing the defendant to enter a guilty plea to two substantive counts (*i.e.*, Counts 2 and 9) and one forfeiture count (*i.e.*, Count 14) of the Indictment. [Record Nos. 30, 32, 61]

### B.    The Written Plea Agreement Negotiated By The Parties

The written Plea Agreement tendered to the Court on March 9, 2009 contains the following lengthy factual summary supporting the defendant's guilty plea:

4.    As to the charges, the United States could prove the following facts that establish the essential elements of the offenses beyond a reasonable doubt, and the Defendant admits these facts:

The Defendant met a female who lived in the Eastern District of Kentucky (EDKY) online in November 2007, at the site Fling.com. After communicating with the Defendant on-line via Yahoo instant messenger for a short time, she met him in a hotel in Cave City Kentucky, and engaged in sexual acts with the Defendant. They continued to communicate by phone and online. On January 25, 2008, the Defendant sent her five videos containing images of children engaged in explicit sexual acts including images of female children as young as 6 years old being digitally penetrated, performing oral sex and intercourse with adult males, and some in bondage. The female contacted the Kentucky State Police when she received the videos. During January 2008, the Defendant discussed including a child in their sexual activity and asked her to find a runaway or drug addicted child for that purpose. In the chats, the Defendant also talked to the female about sexually abusing a neighbor's 11 year old child. On February 5, 2008, Detective Clyde Bertram, with the Electronic Crimes Unit,

began an undercover online investigation and preserved the online chats. On February 6, 2008, the Defendant was informed on line, by Detective Bertram acting as the female, that she had her cousin's 14 year old daughter living with her. The Defendant instructed who he thought was the female to become friends with the 14 year old and get her to drink and then begin to touch her and talk to her about sex with boys. During the chat on February 18, 2008, the Defendant was asked how the grooming was going and was told the girl accidently found one of the videos the Defendant had sent. During the same chat, the Defendant sent seven videos containing images of children engaged in explicit sexual acts including female children engaged in anal sex, be[]stiality, oral sex with adult males and a male child engaged in oral sex with an adult female. The Defendant continued to chat about sex with the 14 year old child, giving further instructions on what to do with the child sexually and the sex acts he is going to perform on the child. The Defendant also chats about bringing a video camera and his computer with more videos to show the child and to use during sex acts with the child. On February 19, 2008, the chats continue and plans are made for the Defendant to meet the female child in a hotel in Frankfort, Kentucky. There was no contact until February 22, 2008, when the Defendant left a message that he was in an accident and was drugged up on medicine. Additionally, arrangements were made to meet and have sex with the 14 year old child on March 14, 2008, however, the Defendant indicated his back was sore and that since his wife and child were out of town, the female and 14 year old should travel to his residence in Tennessee. A search warrant had already been obtained and it was executed at the Defendant's residence located in the Middle District of Tennessee (MDTN) on March 18, 2008. It was determined the Defendant's wife and child were out of town. The Defendant admitted possessing and distributing child pornography, however, denied he would have sex with a 14 year old. During the forensics examination of one of the Defendant's computers seized during the warrants, a series of chats between the Defendant and another female who lived in the Western District of Kentucky (WDKY) were found and it appeared she mailed the Defendant a CD containing child pornography in 2006 when the Defendant was on active duty in the Army over in Iraq. A federal search warrant was obtained and executed for her residence several months ago. The female in the WDKY admitted meeting the Defendant online in the summer of 2006, and admitted mailing the Defendant a CD with child pornography at his request to Iraq, and to having the Defendant travel to her home in September of 2006 for the purpose of engaging in sexual relations. There were chats recovered from her computer in which the Defendant asked the female in the WDKY if she would let her 3 year old daughter perform oral sex on the Defendant if he did not hurt her. The female admitted she sent the Defendant via e-mail a clothed photograph of her 3 year old daughter during the time period he was requesting to have sexual relations with her daughter, however, she denied that she would have let this happen. According

to the female in the WDKY, the Defendant was not able to perform sexually in September of 2006, so they lost contact until November of 2007.  In November of 2007, the Defendant contacted her in a chat room and immediately chatted graphically with her about having sex with her and also indicated during the November 2007 chat that he wanted her to let her 3 year old daughter perform oral sex on the Defendant.  The female indicated during her interview she became concerned and stopped all communication with the Defendant.  A forensic examination of the computer turned over to police by the female in the EDKY revealed 12 videos containing child pornography.  A forensic examination of the computer and related electronic equipment seized at the Defendant's residence, revealed large quantities of photographs and videos containing images of child pornography.  The Defendant knowingly utilized the internet to sent 12 videos of child pornography to a female in [information deleted] County, Kentucky, and was in knowing possession of child pornography on his computer during the search warrant in March, 2008.  The forensic examination of items seized from the Defendant's residence revealed over 41 known victims and over 1,000 photos and videos containing child pornography including children as young as 4-6 years old.

[Record Nos. 33, 44]

In addition to the foregoing summary, the Plea Agreement contained an accurate outline of the statutory penalties as well as non-binding recommendations regarding calculations under the United States Sentencing Guidelines ("USSG").  [*Id.* ¶¶ 5, 6]  Further, Reilly "waive[d] the right to appeal and the right to attach collaterally the guilty plea, conviction, and sentence, including any order of restitution.  The defendant did, however, reserve the right to appeal any sentence greater than 144 months of imprisonment. [*Id.* ¶ 9]

Reilly's attorney was able to negotiate an additional provision that limits the ability of other jurisdictions to bring additional charges against him.  Paragraph 14 of the Plea Agreement states that "**The United States Attorney's Office for the Western District of Kentucky and the Middle District of Tennessee have agreed not to bring additional charges against the Defendant related to evidence obtained in this case if his sentence includes the relevant**

**conduct from each of those Districts that was obtained as part of this prosecution. The**

**parties understand any new evidence obtained is not covered by this agreement**." [*Id.* ¶ 14

(emphasis in original)]   Finally, in paragraph 15, the defendant acknowledged that: (i) he

understood the agreement; (ii) his attorney had fully explained the Plea Agreement to him; and

(iii) his decision to enter into the agreement with the government was voluntary.

> ### C.       The Re-arraignment Hearing

Reilly confirmed his understanding of these central provisions of the Plea Agreement

during the re-arraignment hearing.   [Record No. 61]   The transcript reflects that the defendant

was placed under oath at the beginning of the hearing.   The judge then confirmed that,

notwithstanding certain stressors in his life, Reilly understood his obligation to provide truthful

answers and that he was competent to enter a guilty plea.   [*Id.*, pp. 3-10, 32-33]   The defendant

further confirmed that his new attorney had been quite helpful in his understanding the charges

in the case.   More specifically, Reilly offered the following sworn responses to the Court's

questions:

> THE COURT:                     . . .   Are you under any medication, or do you need
> medication to the extent that you've been unable to understand the charges against you
> and to work well with Mr. Stephens?
>
> DEFENDANT REILLY:       No.  I understand the charges against me, Your Honor.
>
> THE COURT:                   I'm sorry?
>
> DEFENDANT REILLY:       I understand the charges against me, Your Honor.  And Mr.
> Stephens has been quite helpful.
>
> THE COURT:                   Okay.
>
> DEFENDANT REILLY:       I have no complaints about my attorney.

THE COURT              Are you fully satisfied with his advice, representation, and counsel?

DEFENDANT REILLY:      Yes, I am, Your Honor.

THE COURT:             You earlier had another attorney, David Bratt.  And I believe at your request I replaced Mr. Bratt with Mr. Stephens.  And I gather there was some displeasure with the service you were getting from Mr. Bratt?

DEFENDANT REILLY:      Yes, Your Honor.

THE COURT:             And has all of that been resolved now with the attorney change?

DEFENDANT REILLY:      Yes, it has, Your Honor.

THE COURT:             Was there any displeasure that you felt that you believe has resulted in prejudice to you in any way?

DEFENDANT REILLY:      Not as far as I can tell, Your Honor.

THE COURT:             Okay.  All right.  Mr. Stephens, is he competent to plead guilty today?

MR. STEPHENS:          Yes, ma'am.  I am absolutely certain he is competent. . . . And in terms of competency, there is not a shred of doubt in my mind that he understands everything.  He has been extraordinarily helpful and in conversations with me, he's extremely articulate.  He's very intelligent.  But I look at that, frankly, as a separate issue from the emotional distress of coming back home.

THE COURT:             In your opinion has any of the emotional distress he has suffered or continues to suffer interfered in any way with his understanding of the charges against him or his reaching the decisions he's announcing today?

MR. STEPHENS:          Absolutely not, no, ma'am.

[*Id.*, pp. 7-9]  While counsel did not have concerns regarding Reilly's competence, he advised the Court that he would be seeking a psychological evaluation prior to sentencing to address certain issues he intended to present in mitigation.  [*Id.*, p. 10]

-9-

After the defendant was questioned regarding his competency to enter a guilty plea, the Court thoroughly reviewed the relevant portions of the Plea Agreement with the parties.  [*Id.*, pp. 13-27]  During this discussion, Reilly confirmed that he: (i) had reviewed the document; (ii) had discussed the terms of the Plea Agreement with his attorney; and (iii) understood all relevant provisions.  Counsel for the government also reviewed the central parts of the Plea Agreement at the request of the Court.  Regarding the waiver provisions of the parties' agreement, the Assistant United States Attorney ("AUSA") made the following statement:

> Also in this case, the defendant has agreed he won't file any motion to reduce his sentence for playing any sort of a mitigating role in these offenses.
>
> He has also waived the right to appeal and his right to file a separate lawsuit about his guilty plea.
>
> He's also waived his right to appeal his sentence with an exception I'm going to go over in a moment, including any order of restitution.
>
> The defendant does reserve the right to appeal any sentence that would be greater than 144 months imprisonment.
>
> Also in this case, the defendant has agreed to forfeit to the United States any interest he has in the property listed in Count 14 of the indictment and will execute all paperwork necessary to give up his rights in that property.
>
> And finally, Your Honor, in this case I would like to point out paragraph 14 on page 8 of the plea agreement it has the language about that this agreement does not bind the United States Attorney's offices in other districts or any other federal, state, or local prosecuting authorities.
>
> However, in this case the United States Attorney's office for the Western District of Kentucky and the Middle District of Tennessee have agreed not to bring additional charges against the defendant related to evidence obtained in this case if his sentence includes the relevant conduct in each of those districts that was obtained as part of this prosecution . . . .  The parties understand that any new evidence obtained is not covered by the agreement.  So if there is something out there that none of us know about, that's not covered.  But we put all of the facts

that we knew of in pages 2 through 5, and that's what they're agreeing to, and they have written in that they agreed to that, Your Honor.

[*Id.*, pp. 18-19]  Reilly confirmed that the AUSA had correctly summarized the document, including the waiver provisions.  Reilly's attorney also advised the Court that the parties might seek to amend the document based on a recent ABA ethics opinion concerning waiver of ineffective assistance of counsel claims under 28 U.S.C. § 2255.  [*Id.*, pp. 19-21]

The Court also determined that the defendant had reviewed the factual statement contained in paragraph 4 of the Plea Agreement and could confirm that the transcripts of his conversations were accurately reflected in that paragraph and that he was the sole user of the laptop used to send the subject messages and videos.  However, in an apparent attempt to minimize his conduct, Reilly indicated that, because he was "stoned" on narcotics during the time charged, he could not confirm having an independent memory of the events. [*Id.*, pp. 22-25] Finally, Reilly confirmed that the Plea Agreement contained all promises that had been made to him in exchange for his guilty plea and that he was not being forced or coerced to plead guilty. [*Id.*, pp. 25, 27]  Instead, Reilly was pleading guilty because he was, in fact, guilty.  [*Id.*, p. 27][4]

### D.    Materials Submitted Prior To The Sentencing Hearing

The sentencing hearing for Reilly was originally scheduled for June 18, 2009.  However, approximately one month in advance of the June date, the defendant's counsel requested that the hearing be continued for ninety days.  In support, Reilly's attorney stated:

---

4        At pages 31 and 32 of the transcript of the March 10, 2009 hearing, Reilly again confirms that he knowingly distributed child pornography using his computer on January 25, 2008, and February 18, 2008, as alleged in Counts 2 and 9 of the Indictment.  [*Id.*, pp. 31-32]

the parties have spent a great deal of time reviewing medical and psychological records of the Defendant. Pursuant to the nature of the offense to which the Defendant has plead guilty, the Defendant and his counsel believe that an independent psychological examination is both necessary and relevant to sentencing mitigation herein. The Defendant has disclosed to the United States Attorney the name of a licensed clinical psychologist, Dr. Harwell Smith, who has been retained by the family of the Defendant to do an independent psychological evaluation and such other testing as he may believe is reasonably necessary and to provide possible testimony in mitigation of sentencing issues herein.

[Record No. 35] This motion was granted and the sentencing hearing was continued until November 13, 2009 by agreement.

The Presentence Investigation Report ("PSR") prepared by the United States Probation Office was disclosed to the parties on October 9, 2009, and revised on November 3, 2009. [Record No. 50] After outlining the relevant facts, Reilly's sentencing range for imprisonment under the Guidelines was determined to be 151 to 188 months. [*Id.* ¶ 51] This calculation was based on a Total Offense Level of 34, but no prior convictions. Due to the nature of the defendant's crimes, Reilly also faced a term of supervised release which ranged from five years to life. [*Id.* ¶ 54] The PSR contains information regarding: (i) Reilly's physical condition and injuries suffered while serving in the military; (ii) factors affecting the defendant's mental and emotional health; and (iii) substance abuse. [*Id.* ¶¶ 42-46] Further, at counsel's request, a complete copy of Dr. Smith's report was attached to the PSR.[5] The addendum to the PSR

---

[5]     In relevant part, the report concludes that the defendant has a history of long-standing psychological problems as well as "significant and substantial impairment of brain functioning," "significant psychological disturbance," and a diagnosis of "Depressive Disorder and Personality Disorder." According to Smith, "[t]he research literature, behavioral history, and psychological and neuropsychological testing results supports the hypothesis that Patrick Reilly's child pornography interest arose out of a malfunction in the structure of his brain caused by the noted factors. . . . [Thus,] it is regarded as likely, but not certain, that the demonstrated brain and psychiatric impairments were responsible for the confessed distribution of the child pornography." [Record No. 50; attachment]

indicates that the officer preparing the report also confirmed that the Reilly had not been charged with any disciplinary issues during eleven years of military service.[6]

Reilly's attorney filed a Sentencing Memorandum for the Court's consideration two weeks in advance of the sentencing hearing.  [Record No. 38]  Through this memo, counsel addressed the guideline calculations contained in the PSR as well as relevant sentencing factors under 18 U.S.C. § 3553.  While not attempting to diminish the seriousness of child pornography offenses, counsel highlighted other serious violent and non-violent offenses and compared the Base Offense Levels generally applied in those matters.

In addition to pointing out that there were no victims directly harmed in this case, counsel asserted that the Court should consider whether the guidelines applied in this case were overly severe in light of the sentencing objectives of 18 U.S.C. § 355(a)(1).  And other relevant factors such as, *inter alia*, the defendant's lack of criminal history, likelihood of recidivism, stable employment history, strong family support, medical and mental health issues, aberrant behavior, involvement of an uncharged third person, and military service were argued.  Regarding this last factor, attorney Stephens asserted that the presumption against considering Reilly's long military service as a mitigating factor under USSG § 5H1.11 had been rebutted.[7]  Counsel relied upon

---

6       A review of the transcript from the sentencing hearing confirms that all of this information was fully considered by the Court in determining an appropriate sentence.  [*See* Record No. 60, pp. 2-3, 4, 115-43]

7       The guideline manual in effect at the time of Reilly's sentencing hearing provided that "[m]ilitary, civic, charitable, or public service; employment-related contributions; and similar good works are not ordinarily relevant in determining whether a departure is warranted."  USSG § 5H1.11 (November 1, 2008).  This section was amended, effective November 1, 2010, to provide:

   Military service may be relevant in determining whether a departure is warranted, if the military service, individually or in combination with other offender characteristics, is presented to an unusual degree and distinguishes the case from typical cases covered by the

the defendant's medical records and recently-prepared reports of Drs. Smith and Carbary to supplement his arguments.

### E.    The Sentencing Hearing

The sentencing hearing was held on November 20, 2009, beginning at 9:00 a.m. and concluding at 2:55 p.m.  [Record No. 60]  Two witnesses (Harwell Smith, Ph.D, and Angela Ann Reilly) were called by the defendant.  The United States also called two witnesses (Michael McGhee, M.D, and Shannon Schaefer) and offered several exhibits regarding issues affecting the Court's sentencing determination.  At the conclusion of the hearing, the Court denied the defendant's motion for a downward departure and variance and imposed a term of incarceration of 151 months on each count of conviction, to be served concurrently, followed by a life term of supervised release.  [Record No. 44]

The testimony of Dr. Smith and Angela Reilly was submitted in support of the defendant's request for a departure and/or variance from the correctly-calculated guideline range. Dr. Smith's testimony on direct examination was consistent with the information and conclusions expressed in the report attached to the PSR.  However, several of Dr. Smith's conclusions regarding whether the defendant suffered certain brain injuries — and whether his criminal conduct could be attributed to the head injuries alleged by the defendant — were effectively challenged during cross-examination.  [Record No. 60, pp. 21-50]

---

guidelines.

Civic, charitable, or public service; employment-related contributions; and similar prior good works are not ordinarily relevant in determining whether a departure is warranted.

USSG § 5H1.11 (effective November 1, 2010).

-14-

The defendant's wife, Angela Reilly, offered additional testimony during the sentencing hearing regarding: (i) injuries the defendant suffered during a 2005-2006 tour of duty in Iraq; (ii) subsequent changes in the defendant's personality and behavior following his return to the United States; and (iii) the defendant's consumption of alcohol and medications beginning around 2006. Cross-examination of this witness likewise undercut the defendant's assertions that his criminal conduct was related to debilitating head injuries alleged suffered in 2006.

In response to the evidence presented by Reilly, the United States called two witness to testify during the sentencing hearing: Dr. Michael McGhee and Shannon Schaeffer. The testimony of these witnesses appears at pages 71-113 of the transcript of the November 20, 2009 hearing. Dr. McGhee is employed by the Department of Defense at the Fort Campbell army base. As chief of the Traumatic Brain Injury and PTSD clinic, Dr. McGhee testified regarding the effects of mild traumatic brain injuries, post-concussive stress disorder, and post-traumatic stress disorder. [*Id.*, at pp. 71-93] Additionally, he testified regarding the manner in which information is obtained from members of the military returning from service deployments who have suffered various injuries.[8] Dr. McGhee also discounted any connection between the use of medications prescribed for head injuries and/or pain relief and altered sexual preferences. [*Id.*, pp. 79-80] After reviewing all of the medical records, Dr. McGhee testified that there is no documented evidence that Reilly suffered from any brain injury. Further, he did not express any

---

[8]     During cross-examination of Dr. Smith, the United States introduced a number of exhibits containing information provided by Reilly. This information was inconsistent with information Reilly provided during the course of testing and questioning of Dr. Smith. Dr. McGhee explained the thorough process used by the military to ensure that the information provided was accurate.

significant depressive symptoms based on the doctor's review of Reilly's medical records.  [*Id.*, pp. 81-84][9]

Finally, the United States called Shannon Schaefer to testify concerning her contacts with Reilly beginning in May 2006.  Her conversations with the defendant began while he was stationed in Iraq.  [*Id.*, pp. 102-12]  Schaefer's testimony rebutted Reilly's assertions that his criminal actions were brought about by incidents occurring during his deployment.  According to this witness, Reilly had asked Schaefer to send a CD of child pornography because the military did not allow him to take it with him at the time of his deployment in 2005.  [*Id.*, pp. 108-09]

After considering the parties' arguments, the Court denied the defendant's motion for a downward departure and variance from the guideline range of 151 to 188 months of imprisonment.  In relevant part, the Court rejected counsel's arguments that a lower sentence was appropriate based on "all that [] this defendant has suffered, including the IEDs, including overmedication, . . . including not being given the correct and proper timing, medical assistance that he needed . . . . for the variance or the departure on the grounds of the long-term service, the injury, the suffering that this gentleman was – had in the field of combat for his country."  [*Id.*, p. 119; *see also id.*, pp. 150-52]

Likewise, the Court rejected the defendant's arguments that a variance was appropriate due to impaired functioning brought about brain trauma suffered during combat.  The reasons

---

9      Medical records indicate that the defendant fell and suffered a head laceration in 2002.  However, he was examined several times following that incident and did not demonstrate any lasting effects from the injury.

given for the rejection of the defendant's motion for a departure or variance from the guideline range and for the sentence ultimately imposed by the Court are outlined at pages 143 thorough 145 and 152 through 154 of the sentencing transcript. The reasons are compelling and totally undercut Reilly's arguments that his attorney did not properly present and argue all relevant factors which might arguably support a reduced sentence.[10]

In imposing a sentence at the bottom of the guideline range, the Court did not ignore the defendants military record. Instead, the Court noted that his "distinguished military record and the lack of discipline there propels me to move toward the bottom of the guideline range." [*Id.*, p. 153] However, the Court found the most important sentencing factor to be protection of the public.

### F.   Reilly's Direct Appeal

Reilly filed a timely Notice of Appeal following the Court's entry of Judgment. [Record No. 48] However, on December 2, 2011, the United States Court of Appeals for the Sixth Circuit  affirmed this Court's judgment and sentencing determinations.  [Record No. 65][11]  In addressing some of the same arguments that were presented to this Court, the Sixth Circuit noted that

> Congress has specifically instructed that child crimes and sexual offenses are to be treated differently than other types of crimes – the "sole grounds" permissible for a downward departure are those "expressly enumerated" in Par[t] 5K.  *Id.* § 5K2.0(b); *see also id.* app. C, amend. 649 (2003) (noting that the amendments to

---

10      In fact, the Court rejected the government's recommendation for a sentence at the mid to upper-end of the guideline range.  [Record No. 60, pp. 145-50]

11      Attorney Stephens also represented Reilly during his direct appeal.  *United States v. Reilly*, 662 F.3d 754 (6th Cir. 2011).

§§ 5K2.0 and 5K2.22 were "made directly by [Congress as part of] the PROTECT ACT, Pub.L. 108-21").

[*Id.*, p. 5] Thus, the appellate court specifically rejected Reilly's argument that a departure from his guideline range should have been considered by virtue of either his military service or lack of criminal history.

The Sixth Circuit also rejected Reilly's argument that this Court should have varied from the appropriate guideline range under 18 U.S.C. § 3553. Instead, the appellate court concluded that Reilly's sentence "was in fact substantively reasonable." [*Id.*, p. 6] The following aptly summarizes that court's holding:

> Reilly had a distinguished military career. He suffered injury in the service of his country, which may have contributed to his criminal misconduct in this case. And prior to this case, he had no criminal record. However, he also downloaded more than one thousand images and videos containing child pornography. He exchanged child pornography with nearly fifty people. He sent child pornography to a woman's online account and instructed the woman to watch the videos with a child to groom the child for sexual activity. And he made plans to shift from viewer of child pornography to active participant when he planned to videotape himself sexually abusing the child. Under the totality of the circumstances, his sentence of 151 months – at the lowest end of the Guidelines range of 151 to 188 months – is substantively reasonable.

[*Id.*, p. 9]

Reilly filed a petition for a writ of certiorari with the United States Supreme Court. However, that petition was denied on April 16, 2012. [Record Nos. 69, 70]

### G.   Reilly's Motion Seeking Collateral Relief

Having exhausted his direct appeals, Reilly returned to this Court seeking collateral relief on September 24, 2012. [Record No. 71] Reilly's § 2255 motion asserts three claims, two of which allege ineffective assistance of counsel. First, the defendant contends that his attorney

was ineffective by failing to negotiate a more favorable plea.  More specifically, Reilly contends that his attorney should have negotiated a plea agreement which included a stipulation for an adjustment under USSG § 3B1.2 for a minor role in the offense and for a departure or variance for his military service.  Additionally, Reilly argues that his attorney's negotiations should have included a stipulation that the government would not attempt to civilly commit him under 18 U.S.C. § 4248.

The defendant also argues that his attorney was ineffective due to the "individual and cumulative impact of multiple deficiencies or errors" during the pretrial and plea proceedings, sentencing, and the direct appeal.  [*Id.*, p. 6]  And finally, Reilly alleges that his sentence violates the First, Fourth, Fifth, Sixth, and Eighth Amendments to the United States Constitution.

## II.

Although this Court must make a *de novo* determination of those portions of the magistrate judge's recommendations to which objection is made, 28 U.S.C. § 636(b)(1)(C), "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  A party who fails to file objections to a magistrate judge's proposed findings of fact and recommendation waives the right to appeal. *See Wright v. Holbrook*, 794 F.2d 1152, 1155 (6th Cir. 1986).  Further, a general objection to the entirety of a magistrate judge's report has the same effect as a failure to object. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

-19-

After briefing of the issues raised in Reilly's § 2255 motion, United States Magistrate Judge J. Gregory Wehrman issued a Report and Recommendation on March 11, 2013. [Record No. 81] In his report, Magistrate Judge Wehrman concluded that the defendant was not entitled to collateral relief based on any of the issues raised in his motion.

Reilly has objected to Magistrate Judge Wehrman's determination that he was not entitled to a minor role reduction. He continues to assert that his role was not as extensive as those who produced the child pornography. [Record No. 82, pp. 7-8] Next, he argues that the magistrate judge erred in concluding that his attorney was not ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), for failing to negotiate an agreement from the government not to seek civil commitment.[12] [*Id.*, pp. 8-10]

As an initial matter, the magistrate judge properly determined that Reilly's third claim is barred by virtue of the waiver provision contained in his Plea Agreement.[13] After citing the relevant portions of the transcript of the defendant's re-arraignment hearing, Magistrate Judge Wehrman found that Reilly was clearly aware of all relevant parts of the Plea Agreement, including the waiver clause. Thus, Reilly's waiver of the claims contained in his third argument is enforceable. *See United States v. Thompson*, No. 06-56-C, 2009 WL 1917073, at *1 (W.D.

---

12      To demonstrate ineffective assistance of counsel in a criminal matter in which the defendant has entered a plea of guilty rather than proceeding to trial, a movant under § 2255 must show deficient performance by the attorney. He must also establish that the deficient performance prejudiced his defense. Regarding the second element, a defendant must "demonstrate a reasonable probability that, but for counsel's error, he would not have pleaded guilty." *Premo v. Moore*, 131 S. Ct. 733, 743 (2011); *see O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). In the present case, Reilly cannot establish either element.

13      Citing *United States v. Goree*, No. 07-188-KSF, 2010 WL 5980621 (E.D. Ky. Nov. 30, 2010), the magistrate judge explained that "in order to be non-waivable, an ineffective assistance of counsel claim must have some direct relation to the guilty plea, and not merely a vaguely-articulable contention." [Record No. 81, p. 5 (internal quotation marks omitted)]

-20-

Ky. July 1, 2009) ("A valid plea agreement which contains a waiver of the right to seek collateral relief will bar such action, including a § 2255 motion attacking a conviction, sentence, or plea." (citing *Davila v. United States*, 258 F.3d 448, 450-51 (6th Cir. 2001))).  According to Magistrate Judge Wehrman,

> Defendant's previously quoted third claim for relief is a laundry list of allegations which plainly do not directly involve the plea agreement or the very validity of the waiver clause itself.  Accordingly, defendant's third claim for relief is foreclosed by the plea agreement.

[Record No. 81, p. 5]

The magistrate judge also correctly concluded that Reilly's second claim was barred by the waiver provision of the Plea Agreement.  While the claim alleges ineffective assistance, it is properly characterized as a "catch-all" claim, containing allegations that his attorney was ineffective for failing to: (i) file a motion to suppress; (ii) object to unlawful, false, and unreliable evidence used to determine the defendant's sentencing guideline range; and (iii) present the strongest issues on direct appeal to the Sixth Circuit.  The second claim also includes a general contention that Reilly's counsel was ineffective due to a conflict of interest.  According to the magistrate judge, to the extent these assertions are unrelated to the plea agreement itself, they are foreclosed by the waiver provision.[14]  [*Id.*, p. 6]  The undersigned agrees completely.[15]

---

14    Regarding Reilly's claim that his attorney had a conflict of interest, Magistrate Judge Wehrman accurately pointed out that the defendant failed to assert the precise nature of the alleged conflict.  Reilly is not entitled to conduct a fishing expedition to search for evidence to support his conclusory allegation.  *See Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004).

15    The defendant entered a plea to two counts of *distributing* child pornography.  Thus, it is improper for him to argue that he is less culpable when compared to those who actually *produced* the pornography which he distributed.  If the defendant's argument on this point were accepted, it would be logical to conclude that an individual who distributes is always less culpable than one who produces.  Thus, a person convicted of distribution could always argue for a minor role reduction.

Magistrate Judge Wehrman correctly evaluated Reilly's three sub-claims of ineffective assistance of counsel which were not foreclosed by the waiver provision of his Plea Agreement. However, he found no legal or factual basis to support these remaining assertions.  Regarding the defendant's argument for a minor role reduction, Magistrate Judge Wehrman pointed out that, examination of the record "leads to the inescapable conclusion that [Reilly's] conduct cannot be reasonably be described as having been less culpable than anyone else involved in the offense . . ." [*Id.*, p. 9]  Thus, a motion for a role reduction would have been without merit and the failure to file such a motion does not provide a basis for a claim of ineffective assistance of counsel.  [*See id.* (citing *Goldsby v. United States*, 152 F. App'x 431, 438 (6th Cir. 2005))]

Likewise, the magistrate judge properly concluded that Reilly's attorney was not ineffective for failing to seek a reduction based on the defendant's prior military service.  In addition to the fact that this was a discouraged factor for seeking a departure at the time of the defendant's sentencing hearing, Reilly's assertion is factually incorrect.  As the lengthy factual recitation set out above confirms, the defendant's attorney made a strong argument that the Court should evaluate the defendant's military service in connection with his request for a departure under the Sentencing guidelines as well as a variance under 18 U.S.C. § 3553.  [*See* Record No. 38 (Sentencing Memorandum); Record No. 60 (Transcript of Sentencing Hearing),  p. 119]

The magistrate judge was also correct in concluding that Reilly's attorney did not provide ineffective assistance by failing to negotiate an agreement from the United States that it would not seek civil commitment of the defendant under 18 U.S.C. § 4248 following completion of his sentence.  As noted in the Report and Recommendation, Reilly has pointed to nothing to support

his argument that counsel would have been able to successfully negotiate such an agreement. And there is no indication that (i) such provisions have been included in plea agreements in other similar cases, or (ii) the United States would have agreed to including an agreement not to seek civil commitment here. Thus, Reilly has not demonstrated that he was prejudiced by the actions of his attorney. *See Alexander v. Smith*, 311 F. App'x 875, 887 (6th Cir. 2009) ("Failure of his trial and appellate counsel to present a novel legal argument when the caselaw is ambiguous does not constitute ineffective assistance.").

Reilly also claims that the magistrate judge erred in rejecting the remainder of his argument. However, he does not attempt to explain why he believes the magistrate judge's analysis was incorrect. Instead, he simply "restates and incorporates by reference" the arguments contained in his earlier pleadings. [Record No. 82, at p. 11] Thus, the defendant has not properly preserved this issue for the Court's review. As Magistrate Judge Wehrman cautioned,

> [p]articularized objections to [the] Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of the date of service or further appeal is waived. [Further, a] general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written specific objection. Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal.

[Record No. 81, pp. 14-15 (internal citations omitted)] As a result, this final claim is waived and need not be considered further.

## III.

Reilly has totally failed to offer any credible evidence or arguments in support of his claim of ineffective assistance of counsel. And while the defendant attempts to blame the

military, over-medication and use of drugs, and unsupported claims of brain injury to explain his actions, those contentions are just that: unsupported claims. Reilly has committed very serious crimes and should simply look in the mirror to locate the person who bears ultimate responsibility. He has been appropriately sentenced to a term of incarceration of 151 months. While some jurists might effectively argue that his sentence is insufficient in light of the nature of his crimes, the Sixth Circuit has determined that a reasonable sentence was imposed after the Court considered all relevant sentencing factors. Accordingly, it is hereby

**ORDERED** as follows:

1.      The Report and Recommendation of United States Magistrate Judge J. Gregory Wehrman, issued March 11, 2013 [Record No. 81], is **ADOPTED** and **INCORPORATED** by reference.

2.      Defendant/Movant Patrick Michael Reilly's objections to the United States Magistrate Judge's Report and Recommendation [Record No. 82] are **OVERRULED**.

3.      Defendant/Movant Patrick Michael Reilly's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 [Record No. 71] is **DENIED** and his claims are **DISMISSED** with prejudice.

4.      Judgment will be entered contemporaneously with this Memorandum Opinion and Order in favor of Plaintiff/Respondent United States of America.

This 29th day of March, 2013.



Signed By:
*Danny C. Reeves*   DCR
**United States District Judge**